# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

**ICON LASER SOLUTIONS, LLC,**

                       Plaintiff,

**v.**

**ABERCROMBIE & FITCH, CO.,**

               Defendant.

Civil Action No. 3:15-cv-3308

**JURY TRIAL DEMANDED**

## DEFENDANT ABERCROMBIE & FITCH, CO.'S BRIEF IN SUPPORT OF
## ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

**Page(s)**

I.   BACKGROUND ............................................................................................... 2

    A.   Icon Laser's Original Complaint failed to allege facts necessary to demonstrate it was entitled to relief. ............................................................. 2

    B.   The claimed methods of the '207 Patent require lasers that Abercrombie does not own or use. ...................................................................................... 4

    C.   The First Amended Complaint alleges a new theory of recovery. ............. 5

II.  LEGAL STANDARD ..................................................................................... 6

    A.   This case should be disposed of at the pleading stage through Rule 12(b)(6). ....................................................................................................... 6

    B.   A claim of direct infringement of a method claim under § 271(a) requires actual performance of its steps. .................................................................. 7

    C.   Notice of the infringement is required for a claim of infringement brought under § 271(g) unless certain enumerated exceptions apply. ...... 7

        1.   Notice of infringement is generally required to support a § 271(g) claim ............................................................................ 7

        2.   The "owns or controls" exception to § 287(b)(2)'s safe harbor provision applies only if an accused infringer "directs or controls" the third party that allegedly practices the method ................................................................................. 8

III. ARGUMENT ................................................................................................. 10

    A.   Icon Laser has not pled any facts to support a claim of direct infringement under § 271(a). ..................................................................... 10

    B.   Icon Laser has not pled sufficient facts to support a claim of infringement under § 271(g). ............................................................................................. 11

        1.   The safe harbor provision in § 287(b)(2) applies. .................. 11

        2.   The First Amended Complaint is completely devoid of any allegations to support a conclusion that Abercrombie "owns or controls" the suppliers and vendors that purportedly practice the patented

method..........................................................................................12

IV.  CONCLUSION .................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)................................................................9, 12

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
  709 F.3d 1348 (Fed. Cir. 2013)..........................................................7, 9, 10, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................6

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007)................................................................9, 15

*Celanese Int'l Corp. v. Oxyde Chems., Inc.*,
  554 F. Supp. 2d 725 (S.D. Tex. 2008) ...........................................................8

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) ...........................................................6, 7, 10

*Emtel, Inc. v. Lipidlabs, Inc.*,
  583 F.Supp.2d 811 (S.D. Tex. 2008) ...........................................................9, 12

*Gammino v. Cellco Partnership*,
  527 F.Supp.2d 395 (E.D. Pa. 2007) ...........................................................13

*Glob. Patent Holdings, LLC v. Panthers BRHC LLC*,
  586 F.Supp.2d 1331 (S.D. Fla. 2008) ...........................................................10

*Limelight Networks, Inc. v. Akamai Tech., Inc.*,
  134 S.Ct. 2111 (2014).................................................................................7

*Lovelace v. Software Spectrum*,
  78 F.3d 1015 (5th Cir. 1996) ...................................................................6

*Muniauction, Inc. v. Thomson Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008)................................................................9, 15

*Rowe Int'l Corp. v. Ecast, Inc.*,
  586 F.Supp.2d 924 (N.D. Ill. 2008) ...........................................................10

*Samsung Elecs. Co., Ltd v. NVIDIA Corp.*,
  No. 3:14-CV-757, 2015 WL 9200460 (E.D. Va. Dec. 16, 2015)................................9, 14, 15

*Topline Corp. v. Dynasty Footwear, Ltd.*,
   No. C06-1126JLR, 2007 WL 27105 (W.D. Wash. Jan. 2, 2007) ........................................8, 11


**Statutes**

35 U.S.C. § 271 ............................................................................................. *passim*

35 U.S.C. § 287 ............................................................................................. *passim*


**Rules**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ....................................... *passim*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Abercrombie & Fitch, Co. respectfully moves for dismissal with prejudice of Icon Laser's First Amended Complaint for failure to state a claim upon which relief can be granted. In its second bite at the apple, Icon Laser has added to its theory of infringement by import, sale, or use of a product made by a patented process under 35 U.S.C. § 271(g), alleging that Abercrombie "owns or controls" a foreign entity or entities that practice the patented method within the meaning of 35 U.S.C. § 287(b)(1)(B). Thus, according to Icon Laser, the safe harbor provision of 35 U.S.C. § 287(b)(2) does not apply.

The facts alleged in the First Amended Complaint show only Abercrombie's conscious initiative for **corporate social responsibility** and its concern for **safe working conditions** in the manufacturing of products it purchases from vendors and suppliers. In fact, none of the First Amended Complaint's allegations relate to the claimed methods, let alone demonstrate that Abercrombie causes third parties to perform the steps of the claimed methods. As a result, such allegations do not, as a matter of law, demonstrate the type of "direction and control" necessary under § 287(b)(1)(B), and Icon Laser should not be afforded yet another opportunity to correct its deficiencies at Abercrombie's expense.

Because the facts as alleged in the First Amended Complaint do not establish that Abercrombie (a) performed any step of the claimed methods to make any products; (b) had notice of the patent or any alleged infringement prior to its expiration; or (c) "owns or controls" any entity that practices the patented method, Icon Laser has failed to state a claim of infringement upon which relief can be granted. Accordingly, the First

Amended Complaint should be dismissed with prejudice in its entirety and without any further opportunity to amend.

## I.    BACKGROUND

### A.    Icon Laser's Original Complaint failed to allege facts necessary to demonstrate it was entitled to relief.

Plaintiff Icon Laser Solutions, LLC filed this lawsuit on October 14, 2015, alleging both direct and indirect infringement of U.S. Patent No. 5,567,207 (the "'207 Patent"). (Dkt. No. 1.) In its Original Complaint, Icon Laser alleged that Abercrombie "makes, has made, uses, has used, offers for sale, has offered for sale, sells, has sold, imports, or has imported systems or products that directly infringe one or more claims of the '207 Patent." (*Id.*, ¶ 9.) The Original Complaint further alleged that Abercrombie "has had knowledge of the existence of the Patent-in-Suit and had knowledge of its infringement . . . at least as early as the date on which it was served with [the] Complaint."[1] (*Id.*, ¶ 10.)

When Abercrombie pointed out that it could not directly infringe any claim of the '207 Patent because, among other things, it did not own or use any lasers to manufacture apparel, Icon Laser shifted its infringement theory, contending (separate from its Original Complaint) that Abercrombie infringes the '207 Patent under § 271(g) because it imports into the United States, offers to sell, sells, or uses products made by the processes claimed in the '207 Patent. (*Id.*, Ex. A (November 16, 2015 E-mail from Timothy Grochocinski to Neil McNabnay).)

---

[1] Abercrombie was not served with the Original Complaint until after October 14, 2015, when Icon Laser  filed this lawsuit—more than one year after the '207 Patent expired.

On December 7, 2015, Abercrombie moved pursuant to Rule 12(b)(6) to dismiss Icon Laser's Original Complaint for failure to state a claim upon which relief can be granted because (1) Abercrombie did not own any lasers for use in the manufacture of apparel, nor does it use any lasers in the manufacture of apparel (it does not manufacture apparel at all); and (2) the Original Complaint acknowledged that Abercrombie did not have notice of the patent or any alleged infringement until the filing of the Original Complaint, which was more than one year after the '207 Patent's expiration. (Dkt. No. 13, 14.) In its motion, Abercrombie established that, because Icon Laser failed to allege the requisite knowledge of the patent or any purported infringement until after the patent expired, the safe harbor provision in § 287(b)(2) applied, barring any claim brought under § 271(g). (Dkt. No. 14 at 8-9.) The Original Complaint thus failed to allege facts necessary to support a claim under either § 271(a) or (g).[2]

In its March 3, 2016 Order, the Court agreed that Icon Laser had failed to allege sufficient facts to support its claims:

> Plaintiff fails to allege Defendants' knowledge of the patent in suit prior to the expiration of the term of the patent, which is necessary, in this case, for Plaintiff to be entitled to the relief plead for by Plaintiff in this matter.

(Dkt. 21 at 1.) The Court therefore withheld ruling on Abercrombie's Motion and instead granted Icon Laser leave to amend its complaint. (*Id.* at 2.)

---

[2] In its motion, Abercrombie also moved to dismiss Icon Laser's claims of indirect infringement, which have not been reasserted in the First Amended Complaint.

**B.     The claimed methods of the '207 Patent require lasers that Abercrombie does not own or use.**

The '207 Patent is entitled "Method for Marking and Fading Textiles with Lasers," and it "relates to using lasers to simulate conventional laundering techniques, such as stone washing, echo ball washing and acid washing without the use of water or chemicals." '207 Patent at 1:9-11. The '207 Patent issued on October 22, 1996, and it expired on July 31, 2014. *See generally id.* Claims 1 and 27, reprinted below, are the only independent claims in the '207 Patent:

> A method for color fading, dyed textile materials with a laser, comprising the steps of:
>
> > ***placing under a laser beam*** a dyed textile material; and
> >
> > ***scanning the laser beam generated by the laser*** with a selected set of parameters to fade the dye of the textile material to replicate a uniformly faded textile or a stone washed, acid washed or acid ball washed textile.

'207 Patent at Claim 1 (emphasis added).

> A method for fading textile materials treated with a dye, comprising the steps of:
>
> > (a)     ***providing a source of laser radiation***; and,
> >
> > (b)     irradiating the textile material with a laser beam scanned under preselected parameters for absorption by the dye to uniformly fade said dye.

*Id.* at Claim 27 (emphasis added). As noted by the emphasized text, every claim of the '207 Patent (all of which are method claims) requires the use of a laser. *See id.*

As explained in its initial motion, Abercrombie is a clothing and accessories retailer. It does not own any lasers for use in the manufacture of apparel, nor does it use

any lasers in the manufacture of apparel because it does not manufacture apparel. The First Amended Complaint acknowledges this fact, as it does not accuse Abercrombie of using lasers to practice any steps of the '207 Patent's claims.

### C.    The First Amended Complaint alleges a new theory of recovery.

On March 17, 2016, Icon Laser filed its First Amended Complaint, in which it tendered another theory of recovery. (Dkt. No. 24.) Acknowledging that it cannot demonstrate the requisite "notice of infringement" required under § 287(b)(2), Icon Laser now contends that § 287(b)(2)'s safe harbor provision is inapplicable. (*See id.*, ¶ 19.) Specifically, Icon Laser alleges that Abercrombie "directly infringed the '207 Patent pursuant to 35 U.S.C. § 271, including at least 35 U.S.C. § 271(g)" because it "owned or controlled the entity or entities who practiced the '207 Patent" within the meaning of § 287(b)(1). (*Id.*, ¶¶ 9, 10-11.)

To support its new theory, Icon Laser recites several facts found on Abercrombie's website that relate solely to Abercrombie's position on corporate social responsibility and its goal to ensure safe and healthy factory conditions:

- "As an example, at a minimum, Defendant has exerted and exerts control over its suppliers and vendors, including its suppliers and vendors for the [Accused Products], through the use of quality control standards, audits of factory conditions, and contractually obligating suppliers and vendors to adhere to A&F's Code of Conduct";

- "Defendant's website states, 'Abercrombie & Fitch is proud of our commitment to international human and labor rights, and to ensuring that our products are only made in safe and responsible facilities. We partner with suppliers who respect local laws and share our dedication to utilizing the best practices in human rights, labor rights and workplace safety. Abercrombie & Fitch believes that business should

only be conducted with honesty and respect for the dignity and rights of all people.'"; and

- "Defendant's website states, '[a]ll business partners are contractually required to adhere to our vendor Code of Conduct, and all new factories go through an initial social audit. We strive to partner with suppliers who respect local laws and share our dedication for utilizing best practices in human rights, labor rights and workplace safety.'"

(*Id.*, ¶¶ 11, 15, 17.) None of these facts rise to the level of ownership or control of a third party required to bar the applicability of § 287(b)(2)'s safe harbor provision.

## II.    LEGAL STANDARD

### A.    This case should be disposed of at the pleading stage through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions."). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be

exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

**B.    A claim of direct infringement of a method claim under § 271(a) requires actual performance of its steps.**

Direct infringement of a method claim cannot occur unless a defendant actually performs every step of the method. *See Limelight Networks, Inc. v. Akamai Tech., Inc.*, 134 S.Ct. 2111, 2117 (2014); *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1353 (Fed. Cir. 2013) ("[D]irect infringement requires a single party to perform every step of a claim method."). Thus, if a defendant does not actually perform every step of a method claim, that defendant cannot be liable for infringing the claim under a theory of direct infringement. *See Aristocrat Techs.*, 709 F.3d at 1353.

**C.    Notice of the infringement is required for a claim of infringement brought under § 271(g) unless certain enumerated exceptions apply.**

**1.    Notice of infringement is generally required to support a § 271(g) claim.**

Under 35 U.S.C. § 271(g), "[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer." § 271(g). Any remedy under that statute, however, is limited by § 287(b)(2)'s safe harbor provision to the period after an alleged infringer receives notice of infringement:

> No remedies for infringement under section 271(g) shall be available with respect to any product in the possession of, or in transit to, the person subject to liability under such section *before that person had notice of infringement with respect to that product*.

35 U.S.C. § 287(b)(2) (emphasis added); *see also Topline Corp. v. Dynasty Footwear, Ltd.*, No. C06-1126JLR, 2007 WL 27105, at *1 (W.D. Wash. Jan. 2, 2007) ("[A] plaintiff must provide notice of infringement before damages are recoverable under section 271(g).").

"Notice of infringement" is defined as "actual knowledge, or receipt by a person of a written notification, or a combination thereof, of information sufficient to persuade a reasonable person that it is likely that a product was made by a process patented in the United States." 35 U.S.C. § 287(b)(5)(A); *see also Celanese Int'l Corp. v. Oxyde Chems., Inc.*, 554 F. Supp. 2d 725, 729 (S.D. Tex. 2008) ("Actual knowledge is sufficient for notice, but notice may not necessarily constitute knowledge.").

### 2. The "owns or controls" exception to § 287(b)(2)'s safe harbor provision applies only if an accused infringer "directs or controls" the third party that allegedly practices the method.

The notice provisions of § 287(b)(2) apply to a claim brought under § 271(g) unless the accused infringer "(A) practiced the patented process; (B) owns or controls, or is owned or controlled by, the person who practiced the patented process; or (C) had knowledge before the infringement that a patented process was used to make the product the importation, use, offer for sale, or sale of which constitutes the infringement." 35 U.S.C. § 287(b)(1).

To determine whether an accused infringer "owns or controls"[3] the entity that practiced the patented process, courts apply the Federal Circuit's "direction and control"

---

[3] In its First Amended Complaint, Icon Laser relies exclusively on § 287(b)(2)(B). (*See* Dkt. No. 24, ¶ 10 ("Pursuant to 35 U.S.C. § 287(b)(1)(B), the limitations on remedies contained in section 287(b)(2) are not available to a defendant who 'owns or controls, or is owned or controlled by, the person who practiced the patent.'").) As discussed herein,

test. *Samsung Elecs. Co., Ltd v. NVIDIA Corp.*, No. 3:14-CV-757, 2015 WL 9200460, at *9-10 (E.D. Va. Dec. 16, 2015).

Under that test, a court must determine "whether all method steps can be attributed to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) For example, "the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Aristocrat Techs.*, 709 F.3d at 1362 (internal citations omitted); *see also Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007). The standard is also met "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023 (citing *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (stating that an actor "infringes vicariously by profiting from direct infringement" if that actor has the right and ability to stop or limit the infringement)).

District courts have recognized that to raise an issue of fact under the direction-or-control standard, "the alleged infringer must cause third parties to perform steps of the claimed method in accordance with specific instructions and requirements." *Emtel, Inc. v.*

---

Abercrombie does not practice the patented process because, *inter alia*, it does not own or use lasers. Moreover, it is undisputed that Abercrombie did not have knowledge of the patent until after its expiration. Thus, §§ 287(b)(2)(A) and (C) are inapplicable.

*Lipidlabs, Inc.*, 583 F.Supp.2d 811, 834 (S.D. Tex. 2008); *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F.Supp.2d 924, 930–33 (N.D. Ill. 2008); *Glob. Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F.Supp.2d 1331, 1335 (S.D. Fla. 2008).

## III.    ARGUMENT

The allegations in the First Amended Complaint do not provide Icon Laser any ground for entitlement to relief. In particular, and for the reasons discussed below, the First Amended Complaint falls short of stating a claim for relief under either § 271(a) or (g) because: (1) Abercrombie does not perform even a single step of the asserted claims; and (2) Icon Laser has made no allegation that Abercrombie had notice of infringement prior to the patent's expiration. Without the requisite notice, the safe harbor provision in § 287(b)(2)(B) applies, barring any claim brought under § 271(g). The "owns or controls" exception to the safe harbor provision is inapplicable because the facts alleged by Icon Laser in its First Amended Complaint are entirely unrelated to the patented method and thus fail the Federal Circuit's "direction or control" test. Accordingly, the First Amended Complaint should be dismissed with prejudice in its entirety without any further opportunity to amend. *See Cuvillier*, 503 F.3d at 401.

### A.    Icon Laser has not pled any facts to support a claim of direct infringement under § 271(a).

The law is clear that direct infringement of a process patent requires that a defendant actually perform every step of the asserted claims. *See Aristocrat Techs.*, 709 F.3d at 1353. Abercrombie does not own or use any laser in the manufacture of apparel, as it does not manufacture apparel. The First Amended Complaint fails to allege that

Abercrombie performs even a single step of the asserted claims. As such, to the extent the First Amended Complaint purports to allege a claim under § 271(a), such claim fails as a matter of law.

### B. Icon Laser has not pled sufficient facts to support a claim of infringement under § 271(g).

#### 1. The safe harbor provision in § 287(b)(2) applies.

Icon Laser's Original Complaint alleged Abercrombie's knowledge of the '207 Patent and notice of the purported infringement since October 2015, the filing of the Complaint. (Dkt. No. 1. ¶ 10.) It failed to allege that Abercrombie had knowledge of the patent or notice of the alleged infringement prior to the patent's expiration in July 2014. Indeed, after pointing out this fatal flaw in its Order, the Court afforded Icon Laser an opportunity to correct its initial pleading on this basis. Icon Laser has failed to do so.[4]

It is axiomatic, however, that a party can only infringe a patent under § 271(g) "if the importation, offer to sell, sale, or use of the [party's] product *occurs during the term of such process patent*." 35 U.S.C. § 271(g) (emphasis added). Additionally, "a plaintiff must provide notice of infringement before damages are recoverable under section 271(g)." *Topline Corp.*, 2007 WL 27105 at *1. Thus, similar to allegations of indirect infringement, a plaintiff has no remedy under § 271(g) if an alleged infringer did not have knowledge of the patent or the alleged infringement prior to the patent's expiration. *See,*

---

[4] Because it could not establish the requisite notice, Icon Laser changed its game plan, relying for the first time on the "own or control" provision in § 287(b)(1)(B). (Dkt. No. 24, ¶ 19 ("In light of the applicability of 35 U.S.C. § 287(b)(1), for at least the reasons in the preceding paragraphs, Plaintiff is not required to allege notice of infringement under 35 U.S.C. 287(b)(2) to be entitled to a remedy for infringement.").)

*e.g.*, *Babbage Holdings*, 2014 WL 2115616 at *1-2 (granting Rule 12(b)(6) motion to dismiss because plaintiff failed to plead facts that plausibly established defendants' knowledge of the asserted patent prior to its expiration); *Abacus Software*, 2004 WL 5268128 at *27-30 (recommending grant of summary judgment as to indirect infringement claim because defendant had no knowledge of the asserted patent until after its expiration).

Without as much as a bare allegation of knowledge of the patent or purported infringement prior to the patent's expiration, the safe harbor provision in § 287(b)(2) applies, barring any claim brought by Icon Laser under § 271(g).

> **2.    The First Amended Complaint is completely devoid of any allegations to support a conclusion that Abercrombie "owns or controls" the suppliers and vendors that purportedly practice the patented method.**

Icon Laser's First Amended Complaint does not state any facts sufficient to bar application of the safe harbor provision. Icon Laser makes no attempt to demonstrate that Abercrombie (1) is vicariously liable to any of the alleged third party entities, *Aristocrat Techs.*, 709 F.3d at 1362; (2) "conditions participation in an activity or receipt of a benefit upon performance of ***a step or steps of a patented method*** and establishes the manner or timing of that performance," *Akamai*, 797 F.3d at 1023 (emphasis added); or (3) provides specific instructions to its suppliers and vendors ***on how to practice the claimed methods***, *Emtel*, 583 F.Supp.2d at 834. Without such facts, Icon Laser's claims fail as a matter of law because they are barred by the safe harbor provision.

The First Amended Complaint alleges that Abercrombie (1) requires its vendors and suppliers to adhere to its Code of Conduct; (2) uses quality control standards

unrelated to the patented methods; (3) engages in pre-sourcing inspections of new factories to ensure the suppliers meet Abercrombie's social compliance standards; and (4) performs audits of factory conditions. (Dkt. 24, ¶¶ 11, 15, 17.) None of these allegations are associated with the patented method or demonstrate that Abercrombie causes its vendors to perform the steps of the claimed methods in accordance with specific instructions.

Instead, each one of these allegations relate to Abercrombie's **_initiative on corporate social responsibility_**.[5] One portion of that initiative includes Abercrombie's goal to promote safe and healthy working conditions for third-party factory workers.[6] To help achieve that goal, Abercrombie requires its vendors to agree to the terms in its "Code of Conduct," which ensures vendors share Abercrombie's commitment to ethical and responsible business practices when it comes to child labor, nondiscrimination, freedom of association, health and safety, and the environment.[7]

Even if the Code of Conduct is considered a "contract," as Icon Laser contends, it nevertheless falls short of supporting a conclusion that Abercrombie "owns or controls" the vendors that agree to its terms. This is particularly true in the absence of any allegations in the First Amended Complaint that Abercrombie's Code relates in any way to the claimed methods, let alone to whether the Code requires vendors to perform steps of the claimed methods in accordance with any specific instructions. *See Gammino v. Cellco*

---

[5] *See* http://www.anfcares.org/sustainability/social/commitment.jsp.

[6] *See id.*

[7] *See* http://www.anfcares.org/sustainability/social/code_of_conduct.jsp.

*Partnership*, 527 F.Supp.2d 395, 398-99 (E.D. Pa. 2007) (concluding that contract alone is insufficient—"no evidence that Davel controlled how the local providers went about blocking international calls; again, the unrebutted testimony indicates that Davel did not even know the providers' methods").

Significantly, the *Samsung Electronics* case repeatedly relied upon by Icon Laser actually supports dismissal of Icon Laser's First Amended Complaint.[8] In particular, *Samsung Electronics* demonstrates the **very high bar** required to hold an accused "innocent infringer" vicariously liable for the acts of a third party—especially in the absence of any knowledge of the patent or notice of any purported infringement. 2015 WL 9200460, at *9-11. On a set of facts unlike those alleged in the First Amended Complaint, the *Samsung Electronics* court concluded that Samsung had shown sufficient facts to conclude that defendant NVIDIA "controlled" third-party TSMC within the meaning of the Federal Circuit's "direction or control" test. *See id.* But the facts Samsung presented went far beyond a corporate social responsibility initiative and instead demonstrated a clear connection to the patented method. *See id.* Specifically, in the affidavits, NVIDIA officials:

- referred to TSMC as its "primary partner";

---

[8] Icon Laser has twice relied on the "closely connected" argument made by the parties in *Samsung Electronics* to support its position. (Dkt. No. 18 at 3 n.4; Dkt. No. 24, ¶ 14.) Notably, however, the *Samsung Electronics* court rejected the argument that a "closely connected" standard applied in making a determination of whether an accused infringer "owned or controlled" an entity that performs the patented method, and instead applied the Federal Circuit's "direction and control" test: "the Court is not convinced that the parties' papers provide the correct standard for § 287(b)(1)(B). The Federal Circuit's 'direction and control' line of cases appears more appropriate." *Samsung Elecs.*, 2015 WL 9200460, at *9. The *Samsung Electronics* court noted, however, that the result in that case would have been the same under either test. *Id.* at *11.

- stated that NVIDIA "***selects exactly which infringing process will be used to manufacture its products***";

- stated that TSMC always undertook NVIDIA's suggestions and had only once refused to provide information about processing; and

- stated that TSMC shares design information with NVIDIA.

*Id.* at *9-11 (emphasis added). No such allegations exist here. For that reason alone, *Samsung Electronics* is easily distinguished.

Allegations relating to Abercrombie's ***initiative on corporate social responsibility*** are simply insufficient as a matter of law to support a conclusion that Abercrombie "owns or controls" third-party manufacturers that allegedly practice the patented method.[9] *See Cross Med. Prods.*, 424 F.3d at 1311 ("if anyone makes the claimed apparatus, it is the surgeons, who are, as far as we can tell, not agents of [defendant medical device maker] Medtronic"); *see also Muniauction*, 532 F.3d at 1330 ("[t]hat Thompson[, an auctioneer,] controls access to its system and instructs bidders on its use is not sufficient to incur liability for direct infringement"); *BMC Res.*, 498 F.3d at 1381–82 (although defendant Paymentech provided certain data to debit networks, "absent any evidence that Paymentech also provides instructions or directions regarding the use of those data," there could be no inference of direct infringement).

As such, § 287(b)(1)(B) is inapplicable. Therefore, because the safe harbor provision in § 287(b)(2) applies, Icon Laser's claims brought under § 271(g) are barred.

---

[9] Abercrombie's initiatives on corporate social responsibility also do not support a finding that Abercrombie is "closely connected" to vendors that allegedly practice the patented methods.

## IV.    CONCLUSION

Icon Laser's First Amended Complaint fails to state a claim for infringement under either 35 U.S.C. § 271(a) or (g). The deficiencies in the First Amended Complaint cannot be cured because no set of facts exists to warrant an amendment, and thus leave to amend would be futile. Moreover, Icon Laser has already had one opportunity to correct its deficiencies. Therefore, Abercrombie respectfully requests that the Court dismiss this case with prejudice and without any opportunity to amend.

Dated: April 4, 2016                    Respectfully submitted,

By:    */s/ Neil J. McNabnay*
Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
Ricardo J. Bonilla
rbonilla@fr.com
Texas Bar No. 24082704

FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**COUNSEL FOR DEFENDANT
ABERCROMBIE & FITCH CO.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 4, 2016, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/Ricardo J. Bonilla*
Ricardo J. Bonilla
